Filed 11/8/23  P. v. Real CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

RICARDO REAL,

    Defendant and Appellant.

E079584

(Super. Ct. No. FVI701832)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Joseph B. Widman, Judge.  Reversed with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Alan L. Amann, and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Ricardo Real appeals the trial court's order summarily denying his petition for resentencing under Penal Code section[1] 1172.6.  We reverse.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 2007, Detective Rod Medley was assigned to investigate a homicide and a shooting incident that took place in Hesperia.  He attended the autopsy of Seutatia Tausili, who died from a gunshot wound below her left breast.  V.P. was hit by a bullet in the thigh during the incident.  Steve T. and Benjamin J. were present, but not hit by a bullet.

Detective Jon Minard also was assigned to assist in the homicide investigation, and he contacted defendant shortly after the incident.  Defendant told the detective that he was a past member of a tagging group called "WMK."  Defendant gave different versions of the incident during his conversation with Minard.  Defendant told the detective that he saw Brian Dominguez tagging a dumpster near the victims' property when Brian, Brandon Dominguez, and Robert Dominguez started arguing with the victims.  He first told Minard that Robert had a gun in his possession and he attempted to strike one of the

---

[1]  All further statutory references are to the Penal Code.

[2]  The facts about the offenses come from the admissible preliminary hearing testimony of three detectives.  (See § 1172.6, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 986-988 (*Flores*).)

victims with it, but dropped it during the fight. Brandon then picked up the gun and fired it four times. Detective Minard told defendant that his brother had told other investigators that defendant was the actual shooter. Defendant then admitted he was the one who had committed the shooting and that he had fired the gun four times. He said the gun was a .38-caliber revolver from an unknown make that was loaded with four rounds.

Detective John Gaffney searched defendant's house after the shooting incident. While doing so, he saw a .38-caliber gun cleaning kit and boxes of ammunition.

Defendant was eventually placed under arrest based on his inconsistent statements and statements from other parties. Shortly afterward, he was charged with the murder of Seutatia Tausili (§ 187, subd. (a); count 1), three counts of attempted willful, deliberate, and premeditated murder of V. P., Benjamin J., and Steve T. (§§ 664, 187, subd. (a); counts 2-4), and three counts of assault with a firearm on Steve T., V. P., and Benjamin J. (§ 245, subd. (a)(2); counts 5-7, respectively). The information also charged Brian Dominguez and Brandon Dominguez three counts of assault by means likely to produce great bodily injury on Steve T., V. P., and Benjamin J. (§ 245, subd. (a)(1); counts 8-10). All three defendants also were charged with vandalism (§ 594, subd. (b)(2); count 11) and street terrorism (§ 186.22, subd. (a); count 12). The information also alleged various enhancements and that defendant committed the murder unlawfully and with malice aforethought. Among others, as to count 1 and count 2, the information alleged defendant personally and intentionally discharged a firearm causing great bodily injury

3

and death to the victims (§ 12022.53, subd. (d)). As to counts 1 through 7, the information alleged defendant personally used a firearm (§ 12022.53, subds. (a), (b), or (d)).

In 2010, the information was amended to allege a new count of voluntary manslaughter (§ 192, subd. (a); count 13) with a gang enhancement (§ 186.22, subd. (b)(1)(B)) as well as a personal firearm use enhancement (§ 12022.5, subd. (a)). Defendant then pled guilty to assault with a firearm (count 6), voluntary manslaughter (count 13), and gang and firearm enhancements as to the voluntary manslaughter count. In doing so, the prosecution and defendant's attorney stipulated that the trial court could refer to the preliminary hearing transcript as a basis for the plea. The court found that "a factual basis exists for the pleas and the admissions," approved the plea deal, and sentenced defendant to 26 years in prison for counts 6 and 13 and the associated enhancements. The court then dismissed or struck the remaining counts and enhancement allegations against defendant at the prosecution's request. Defendant did not appeal his convictions or sentence.

In April 2022, defendant filed a form petition for resentencing under section 1172.6 (former section 1170.95).[3] In the form petition, defendant checked boxes stating that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and

_____

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without any substantive changes to the statute. (Stats. 2022, ch. 58, § 10.)

4

probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine," that he "was convicted of murder, attempted murder, or manslaughter following a trial or [he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder," and that he "could not presently be convicted of murder or attempted murder because of changes made to [sections 188 and 189], effective January 1, 2019." Defendant also requested that the court appoint him counsel.

The prosecution opposed the petition and asked the court to strike it on the ground that defendant was ineligible for relief because he shot at the victims, killing one of them. The trial court agreed and summarily denied defendant's petition without appointing him counsel. The court reasoned: "Although defendant was charged with murder and attempted murder, and although he pleaded to and was convicted of manslaughter, the People's theory of criminal prosecution was that defendant was the actual shooter. The court's review of the preliminary hearing transcript makes that clear. Ample evidence was presented at the preliminary hearing that defendant was the actual shooter. [Citations.] In fact, defendant pled to and was convicted of personal use of a gun . . . which corroborates the court's impression that defendant was alleged to have been the actual shooter."

III.

DISCUSSION

Defendant contends the trial court prejudicially erred by summarily denying his petition before appointing him counsel and allowing briefing. We agree.

1. *Relevant Law*

"Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.)] significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

Pursuant to section 1172.6, as amended by Senate Bill No. 775, in the context of a guilty plea, "a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; *or* (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by Senate Bill No. 1437 . . . ." (*Flores*, *supra*, 76 Cal.App.5th at p. 987.)

Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 so that persons who were convicted of attempted murder or manslaughter under a theory of

6

felony murder or the natural and probable consequences doctrine are permitted the same relief as those convicted of murder under those theories.  (Stats. 2021, ch. 551, § 2.)

"Senate Bill [No.] 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.]  Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 [citation]."  (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. omitted.)

If the section 1172.6 petition for resentencing contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).)  The court also must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply within 30 days after the prosecutor's response is filed, and then the court must "hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c).)

"While the trial court may look at the record of conviction *after the appointment of counsel* to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited.  Like the analogous prima facie inquiry in habeas

7

corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 971, italics added.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid*.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.)

At the prima facie stage, the court may deny a petition only if the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) In other words, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief." (*People v. Strong*, *supra*, 13 Cal.5th at p. 708.) This is a pure question of law that we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) "[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

8

2. *Analysis*

We agree with defendant that the trial court erred by summarily denying his petition, which was facially sufficient, before appointing him counsel. (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 974-975.) We review the error under *People v. Watson* (1956) 46 Cal.2d 818, which asks whether it is reasonably probable that his petition would not have been summarily denied without an evidentiary hearing had he been appointed counsel. (*Lewis*, *supra*, at p. 974.) The People argue any error was harmless because the record of conviction conclusively establishes that defendant is ineligible for relief. We disagree.

The People first point to the information's allegations as proof that defendant is ineligible for relief. The People concede that the "'generic'" murder charge (count 1) allowed the prosecution to proceed on any theory of liability, including the now-invalid natural and probable consequences doctrine and certain variations of felony murder. (See *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978; *People v. Rivera* (2021) 62 Cal.App.5th 217, 233.) They argue, however, that the fact that defendant was the only one of three defendants charged with Tausili's murder means that he was charged as the direct perpetrator under theories of murder liability that remain valid. Although defendant was the only one charged with the murder in the information, nothing in the information prevented the prosecution from relying on now-invalid theories of liability to prosecute defendant for Tausili's murder. (See *People v. Davenport* (2021) 71 Cal.App.5th 476, 484.) The information did not *require* the prosecution to rely "*only* on direct perpetrator or felony-murder theories of culpability that remain valid," as the

9

People contend. The People did not specify a particular theory of liability for the murder count, so they could have proceeded under a now-invalid theory of vicarious liability. (*People v. Rivera*, *supra*, 62 Cal.App.5th at pp. 232-233.)

The People next point to the personal firearm-discharge enhancement (§ 12022.53, subd. (d)), contending that it establishes that defendant was the only actual killer. Several courts, including our Supreme Court, have held that firearm personal use enhancements do not conclusively show that the defendant was the actual killer. (See, e.g., *People v. Jones* (2003) 30 Cal.4th 1084, 1119-1120 [a finding the defendant "personally used a firearm in the commission" of a felony and murder "would not in itself prove defendant was the actual killer"]; *People v. Davenport*, *supra*, 71 Cal.App.5th at p. 485 [no contest plea to second degree murder and section 12022.5, subd. (a), personal use enhancement did not preclude eligibility for section 1172.6 relief]; *People v. Offley* (2020) 48 Cal.App.5th 588, 597-598 [because an enhancement under section 12022.53, subdivision (d) does not establish as a matter of law that a defendant acted with malice aforethought, it is "insufficient on its own to justify denying a defendant's petition under section [1172.6] at the first stage of review"].) Defendant's admission to personal use of a firearm enhancement under section 12022.53, subdivision (d), even with his no-contest plea to voluntary manslaughter, did not preclude him from relief as a matter of law because, without resort to additional facts, it does not establish that defendant was the actual shooter or harbored a disqualifying mens rea.

10

Finally, the People rely on the preliminary hearing transcript to argue that defendant is ineligible for relief. The Courts of Appeal are split on the issue, which is pending before the California Supreme Court. (Compare *People v. Patton* (2023) 89 Cal.App.5th 649, 657 (*Patton*), rev. granted S279670 (June 28, 2023) [preliminary hearing transcript conclusively demonstrated ineligibility for relief under section 1172.6], with *Flores*, *supra*, 76 Cal.App.5th at pp. 988-992 [concluding that preliminary hearing transcript does not establish ineligibility for resentencing].)

Although defendant's counsel stipulated to the preliminary hearing transcript as a factual basis for defendant's plea deal, "absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[] a binding admission for all purposes.'" (*People v. Rivera*, *supra*, 62 Cal.App.5th at p. 235, quoting *People v. French* (2008) 43 Cal.4th 36, 50-51.) Defendant did not admit the truth of the evidence adduced at the preliminary hearing. Instead, his attorney only stipulated that the preliminary hearing transcript would provide the factual basis for the plea. This stipulation did not permit the trial court to rely on the preliminary hearing transcript as truthful and binding on defendant. (See *Flores*, *supra*, 76 Cal.App.5th at p. 991 [stipulation that preliminary hearing transcript provided factual basis for plea was not binding and thus did not conclusively establish defendant was ineligible for section 1172.6 relief]; *People v. Rivera*, *supra*, 62 Cal.App.5th at p. 235 [stipulation to grand jury transcript as factual basis is not admission of truth of evidence in the transcript]; *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1104 [a general stipulation to a factual basis for

a plea does not amount to an admission of particular facts].)  Instead, a stipulation to the factual basis for a plea "is an admission only of the facts necessary to the charged offense itself."  (*People v. Banda* (2018) 26 Cal.App.5th 349, 359.)

The People cite *Patton* for the proposition that, even without a defendant's binding stipulation, a trial court may nonetheless "rely on uncontroverted evidence in a preliminary hearing transcript to deny section 1172.6 resentencing relief at the prima facie stage."  The California Supreme Court granted review in *Patton* (after briefing was completed in this case), so we may consider it only for its persuasive value.  (Cal. Rules of Court, rule 8.115(e)(1).)

There, the defendant pled no contest to attempted murder, and admitted he personally used and discharged a firearm.  Officers testified at the preliminary hearing that "they had watched the surveillance video and they knew and recognized [the defendant] as the sole perpetrator, who approached [the victim] as he stood at the motel clerk's desk and fired several rounds at him."  (*Patton*, *supra*, 89 Cal.App.5th at p. 657.)  The defendant did not controvert the officers' testimony and did not offer any evidence or argument, in the trial court or on appeal, suggesting that someone else shot the victim.  (*Ibid.*)  The Court of Appeal held that the defendant was ineligible for section 1172.6 relief as a matter of law because the "sworn testimony of police officers, based on surveillance video of the crime, that [the defendant] committed the shooting was and is uncontroverted."  (*Patton*, *supra*, at p. 658.)  In so holding, the court rejected the

defendant's argument that the trial court impermissibly engaged in "'factfinding, weighing of evidence, or credibility determinations.'" (*Ibid.*)

*Patton* is distinguishable. The trial court denied the *Patton* defendant's section 1172.6 petition based on three officers' consistent preliminary hearing testimony that surveillance footage showed that the defendant killed the victim. Here, however, the only preliminary hearing testimony concerning defendant's involvement in the shooting came from Detective Minard, who testified about defendant's *inconsistent statements*. According to Detective Minard, defendant first denied shooting the victim, and instead blamed it on Brandon. But when Detective Minard told defendant that his brother told other officers that defendant shot the victim, defendant changed his story and admitted that he shot the victim, not Brandon.

Thus, to find defendant was the actual shooter based on the preliminary hearing transcript, the court had to find that defendant's admission to the crime or his brother's statement that defendant was the shooter was true while also finding that defendant's prior denial was false. In other words, "[t]o find [defendant] ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage. [Citation.]" (*Flores*, *supra*, 76 Cal.App.5th at pp. 991-992.) The preliminary hearing transcript therefore does not conclusively establish that defendant is ineligible for section 1172.6 relief as a matter of law.

Given that the record of conviction did not conclusively show that defendant was ineligible for relief under section 1172.6, we conclude it is reasonably probable that his

13

petition would not have been summarily denied had the trial court appointed him counsel. We therefore reverse the trial court's order summarily denying defendant's section 1172.6 petition.

IV.

DISPOSITION

The order summarily denying defendant's petition is reversed. The matter is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c), and to hold a hearing under section 1172.6, subdivision (d)(1).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

14